United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALEXANDER BROWN and ARIK SILVA, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ABERCROMBIE & FITCH CO. AND ABERCROMBIE & FITCH STORES,**<br><br>**Defendants.** | **Case No.: 4:13-CV-05205 YGR**<br><br>**ORDER GRANTING MOTION OF DEFENDANTS TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404** |

Plaintiffs Alexander Brown and Arik Silva bring this putative class action against Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. (collectively, "Abercrombie"). Abercrombie allegedly operates at least four brands of retail clothing store in California: Abercrombie & Fitch, Hollister, Abercrombie Kids, and Gilly Hicks. Plaintiffs hope to represent a class of employees at all these stores. Plaintiffs seek monetary damages and injunctive relief for Abercrombie's alleged failure (i) to provide rest periods, (ii) to indemnify business expenses, (iii) to furnish accurate wage statements, (iv) to pay timely wages due upon termination of employment, and for its alleged compelled patronization of Abercrombie-owned stores.

Currently pending before the Court is Abercrombie's Motion to Transfer Venue to the Central District of California pursuant to 28 U.S.C. section 1404. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** the motion.[1] While a plaintiff's choice of forum is generally given great deference, here Plaintiffs seek to represent a class, do not reside in the Northern District, and the majority of the

---

[1] The Court took this matter under submission without oral argument. Civ. L.R. 7-1(b).

actions giving rise to this case occurred in the Central District. Thus, Plaintiffs' choice of this forum is given considerably less deference. In light of this reduced deference, transfer is justified for the convenience of the witnesses, most of whom may be expected to reside in the Central District.

## I. Factual and Procedural Background

Plaintiffs initiated this action in California Superior Court in the County of Alameda on September 16, 2013, and filed the operative complaint in the case, the First Amended Complaint ("FAC"), in Superior Court on October 7, 2013.[2] The FAC alleges that while Plaintiffs worked in stores operated by Abercrombie, Abercrombie failed to provide Plaintiffs with legally required rest periods, failed to compensate Plaintiffs for expenditures incurred in discharging duties of employment, coerced Plaintiffs to patronize stores owned by Abercrombie, failed to furnish Plaintiffs accurate wage statements, and failed to pay Plaintiffs all wages due timely upon termination. (FAC ¶¶ 5, 16-22.) Plaintiffs assert eight claims under California law. (*Id*. ¶¶ 5-6.) Specifically, Plaintiffs seek damages and penalties, as well as interest, attorney's fees, costs, and injunctive relief under California Labor Code sections 201, 202, 203, 226, 226.7, 450, 558, 1198, and 2802; IWC Order No. 7, §§ 9(A) and 12; and California Business and Professions Code section 17200, *et seq*. (*Id*. ¶ 6.) Plaintiffs also seek penalties under California's Private Attorney General Act, California Labor Code section 2699, *et seq*. (*Id*.) Plaintiffs seek to represent "all individuals employed by [Abercrombie] who worked at any Abercrombie & Fitch, Hollister, Abercrombie Kids, and/or Gilly Hicks store . . . as non-exempt hourly employees in California" between September 16, 2009 and the present. (*Id*. ¶¶ 3-4.)

On November 8, 2013, Abercrombie removed the case to federal court under 28 U.S.C. section 1441. (Dkt. No. 1.) On November 20, 2013, Abercrombie filed the instant motion. (Dkt. No. 11 ("Motion").)

Abercrombie has submitted uncontroverted evidence that both Plaintiffs Brown and Silva currently reside within the Central District of California and work at Abercrombie-owned stores located in the Central District. (Dkt. No. 11-1 ("Fugarino Decl. ISO Mot.") ¶¶ 7, 9, 13, 16.) Brown

---

[2] All state court filings, including the FAC, are located in Dkt. No. 1, Ex. A.

2

has worked 148 shifts with Defendants' Abercrombie & Fitch and Hollister stores, 130 of which have been in stores located in the Central District. (*See id*. ¶¶ 2-8.) Silva has worked 85 shifts at Abercrombie & Fitch, all in the Central District. (*Id*. ¶¶ 14-15.)

Abercrombie has submitted further evidence that, of the 48 Abercrombie & Fitch stores owned by Abercrombie in California during the relevant period, 25 are located in the Central District and 12 are in the Northern District. (*Id*. ¶¶ 17-18.) Of the 64 Hollister stores in California during this period, 33 are located in the Central District and 15 are located in the Northern District. (*Id*. ¶¶ 17, 19.) Defendants have more employees in the Central District than in the Northern District. (*Id*. ¶ 20.) During the 18 shifts worked by Brown in the Northern District, Brown's stores were managed by 8 different managers. (Dkt. No. 22-1 ("Fugarino Decl. ISO Reply") ¶ 4.) While working in the Central District, Brown's stores have been managed by 31 different managers. (*Id.*)

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotation marks omitted). Courts considering transfer engage in a two-step analysis. Courts first determine whether the action could have been brought in the target district. *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960). If it could have been, courts then undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen,* 376 U.S. at 622).

In conducting the convenience and fairness analysis, the district court has broad discretion in deciding whether to transfer and must engage in an individualized, case-by-case basis. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). In conducting this analysis, courts in this district commonly articulate the relevant factors as follows:

///

3

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009); *Royal Queentex Enters. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal. March 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see also Jones*, 211 F.3d at 498-99 ("A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." (citing *Ricoh Corp.*, 487 U.S. at 29)). This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (noting that this list of factors "does not exhaust the possibilities" and comparing the factors in *Decker Coal*, 805 F.2d at 843, with those analyzed in *Jones*, 211 F.3d at 498-99). The burden is on the moving party to show that the transferee district is the more appropriate forum. *Jones*, 211 F.3d at 499.

### III. DISCUSSION

#### A. This Action Could Have Been Brought in the Central District of California

A proper district court is one: (1) that has subject matter jurisdiction; (2) where defendant would have been subject to personal jurisdiction; and (3) venue would have been proper. *See Hoffman*, 363 U.S. at 343-44.

As an initial matter, the Court finds that this threshold requirement has been met. The Central District, like this District Court, would have subject matter jurisdiction over the instant action; the Defendant would have been subject to the personal jurisdiction of another California District Court; and venue in the Central District, where most of the events giving rise to this case occurred, would have been proper, s*ee* 28 U.S.C. § 1391(b)(2). Further, "Plaintiffs do not dispute that the Central District of California is a district where their action might have been brought. Accordingly, the only question is whether this Court should transfer the action for the convenience of parties and witnesses." *Wilson v. Walgreen Co*., No. C-11-2930 EMC, 2011 WL 4345079, at *3 (N.D. Cal. Sept. 14, 2011).

4

**B.     Convenience and Fairness Analysis**

The Court considers in turn each of the six relevant convenience factors central to this analysis: (1) Plaintiffs' choice of forum, (2) convenience to the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) local interest in the controversy, and (6) the relative court congestion and time of trial in each forum.

**1.     Plaintiffs' Choice of Forum**

For purposes of a section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer; thus, the question for the Court is how much weight to give this choice relative to the other factors. *See, e.g., Vu*, 602 F. Supp. 2d at 1156-57 (balancing plaintiff's choice against other factors weighing in favor of transfer); *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1082-83 (N.D. Cal. 2008) (same); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1100-02 (N.D. Cal. 2006) (same).

Generally, a plaintiff's choice of forum is entitled to considerable weight and a defendant must make a strong showing of inconvenience to warrant upsetting this choice. *Decker Coal*, 805 F.2d at 843 (9th Cir. 1986). However, the plaintiff's choice is given less deference in a class action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Wilson*, 2011 WL 4345079, at *3. A plaintiff's choice is also given less deference when the plaintiff resides outside of the chosen forum. *Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Vu*, 602 F. Supp. 2d at 1156.[3] In addition, "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where . . . the forum lacks a significant connection to the activities alleged in the complaint." *Id.* at 1106.

Here, Plaintiffs argue that their choice of forum in the Northern District should be given substantial weight and that the Motion should therefore be denied. (Dkt. No. 20 ("Opp'n") at 4.) However, three factors weigh against affording deference to Plaintiffs' choice of forum. First, Plaintiffs brought this action as a putative class action. (FAC ¶¶ 3-4.) Although Plaintiffs contend that the rule granting less deference to class actions does not apply to class actions that are

---

[3] "The policy behind not deferring to a nonresident plaintiff's choice of venue appears tied to the notion that plaintiffs should be discouraged from forum shopping." *Williams*, 177 F. Supp. 2d at 1107.

statewide (as opposed to nationwide), Plaintiffs cite no authority for this proposition. (Opp'n at 4.) Several courts have afforded less weight to the plaintiffs' choice of forum in similar statewide class action cases. *See, e.g., Wilson*, 2011 WL 4345079, at *3 (affording less deference to plaintiffs' choice of forum in a statewide class action); *Kaloghlian v. Best Buy Stores, L.P.*, No. 08-4171 SC, 2008 WL 4890895, at *2 (N.D. Cal. Nov. 12, 2008) (same). Second, the record reflects that both Plaintiffs currently reside in the Central District. (Fugarino Decl. ISO Mot. ¶¶ 9, 16.) Third, the Northern District's connection to the activities alleged in the complaint is significantly weaker than the Central District's, as the majority of the incidents giving rise to the action occurred there. While Brown did work a total of eighteen shifts at two Hollister stores in this District, the rest of his shifts—and all of Silva's—have been in the Central District. (*Id.* ¶¶ 2-8, 14-15.) Thus, far more of the activities giving rise to the complaint occurred in the Central District.

Based upon these factors, the Court affords Plaintiffs' choice of forum significantly reduced deference. *See Wilson*, 2011 WL 4345079, at *3 (affording plaintiffs' choice of forum reduced deference because the plaintiffs brought a class action and did not reside in the district where the suit was brought, and because the facts pertinent to the action occurred in the transferee district); *Lucas v. Daiichi Sankyo Co., Inc.*, No. C 11-0772 CW, 2011 WL 2020443, at *3 (N.D. Cal. May 24, 2011) ("[Plaintiff's] choice of forum in this action is entitled to reduced deference because he seeks to represent a class and he has filed his complaint in a district outside of the district in which he is domiciled." (citation omitted)); *Flint v. UGS Corp.*, No. C07-04640 MJJ, 2007 WL 4365481, at *3 (N.D. Cal. Dec. 12, 2007) ("Accordingly, the Court finds that although Plaintiff chose to bring the present case within the Northern District, the *de minimus* connection of Plaintiff and the case to this District reduces the deference given to Plaintiff's choice of forum."). Thus, while this factor, as always, leans against transfer, in the circumstances of this case it is afforded minimal weight.

### 2. Convenience of the Parties

"Convenience of the parties is an important factor to consider for transfer of venue." *Flint*, 2007 WL 4365481, at *3. In weighing this factor, courts do not consider the convenience to parties that have chosen to bring a case in a forum where they do not reside, nor do courts consider the

6

convenience to potential class members whose participation in the case is merely speculative. *See id*. Thus, while Abercrombie argues that the Central District is a more convenient forum because Plaintiffs reside in Los Angeles, Plaintiffs counter that potential class members are located throughout California, including the Northern District. (Motion at 10; Opp'n at 5-6.)

Neither party persuades on this factor. As Plaintiffs brought this case in the Northern District, and as the location of potential class members does not factor into this consideration, the Court finds this factor to be neutral.

### 3. Convenience of the Witnesses

The convenience to the witnesses is the most important factor in a section 1404(a) analysis, and the convenience of non-party witnesses is more important than the convenience of the parties. *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 SI, 2010 WL 5173872, at *3 (N.D. Cal. Dec. 15, 2010). Convenience of a litigant's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue. *Shore to Shore Props., LLC v. Allied World Assurance*, No. C 11-01512 JSW, 2011 WL 4344177, at *3 (N.D. Cal. Sept. 15, 2011); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988).

Here, Plaintiffs argue that, as this is a putative class action involving Abercrombie stores throughout the state, there are Abercrombie employees in the Northern District with relevant knowledge about the case who should be considered potential witnesses who would be inconvenienced by a transfer. (Opp'n at 5-6.) However, Plaintiffs have not indicated that class members other than themselves will be called to testify as witnesses or deponents. Neither do Plaintiffs specifically identify any non-party witnesses in the Northern District. Therefore, the location of these unidentified, hypothetical witnesses bears little weight in the Court's analysis. *See Wilson*, 2011 WL 4345079, at *4 (finding that the location of putative class members carried little weight in the convenience of witnesses analysis where there was no indication that class members other than the plaintiffs would be needed to testify); *Johns v. Panera Bread Co.,* No. 08–1071 SC, 2008 WL 2811827, at *3 (N.D. Cal. July 21, 2008) (noting that because "'the Court lacks any indication of how many people from the putative class are anticipated to be witnesses, and what their relevant testimony would be' . . . the Court 'cannot base a decision to transfer based on

7

speculation as to the relevance of potential, but unnamed, witnesses.'" (quoting *Flint*, 2007 WL 4365481, at *4) (citation omitted)).

Abercrombie counters that this factor weighs substantially in favor of transfer because the majority of potential witnesses—including most of the Plaintiffs' co-workers and supervisors—are located in the Central District. (Motion at 10.) However, the Court affords less weight to the argument as Abercrombie currently employs those witnesses. The Court notes, however, that Abercrombie has neither identified its potential witnesses nor outlined the substance or relevance of their testimony. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) (finding that the moving party failed to establish that this factor favors transfer because it did not identify key witnesses to be called or present a statement as to the importance of their testimony); *Williams*, 157 F. Supp. 2d at 1108 ("To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance.").

Neither party has made a particularly strong showing of inconvenience here, as neither has specifically identified any potential non-party witnesses. Nevertheless, on balance, this factor weighs in favor of transfer. As this is an employment action involving disputes over rest periods, employment policies, and payment practices, the probable witnesses will likely include Plaintiffs' current and former managers and supervisors. Of the 39 managers who have managed stores at which Brown has worked, 31 have been at stores in the Central District. (Fugarino Decl. ISO Reply ¶ 4.) Silva has worked exclusively in the Central District. (Fugarino Decl. ISO Mot. ¶ 15.) Further, because Plaintiffs have worked predominately in the Central District, to the extent that current or former co-workers may need to testify or be deposed, it is not unreasonable to conclude that the majority of these potential witnesses are more likely to be located in the Central District than in the Northern District. (*Id.* ¶¶ 8, 15.) While the Court affords little weight to party-witnesses, there is a distinct possibility that some of these potential witnesses will no longer be employed by Abercrombie. Because the convenience to non-party witnesses is of paramount concern, the location of these possible witnesses is given greater weight. Thus, on balance, this factor weighs in favor of transfer. *See Wilson*, 2011 WL 4345079, at *4 (finding this factor to

8

weigh toward transfer in a wage and hour action where the plaintiffs' managers and co-workers were the principal witnesses and "largely resid[ed] in the [transferee] district").

### 4.  Ease of Access to the Evidence

The location of evidence may be an important factor in a convenience and fairness analysis. *Vu*, 602 F. Supp. 2d at 1156.  However, this factor is neutral or carries only minimal weight when the evidence is in electronic form.  *See, e.g., Sarinara v. DS Waters of Am. Inc.*, No. C-13-0905 EMC, 2013 WL 3456687, at *2 (N.D. Cal. July 9, 2013) (finding ease of access to evidence to be a neutral factor "given the availability of digital records"); *Friends of Scot., Inc. v. Carroll*, No. C-12-1255 WHA, 2013 WL 1192956, at *3 (N.D. Cal. Mar. 22, 2013) ("[W]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden.").

Here, Abercrombie argues that the majority of the relevant stores, garments, documents, and data is located in the Central District.  (Motion at 11.)  However, Plaintiffs correctly counter that the electronic transportation of documents does not impose a burden on Abercrombie in litigating in the Northern District.  (Opp'n at 7.)

Because the documentary evidence in this case likely will be produced in electronic form, the Court finds this factor to be neutral.

### 5.  Local Interest in the Controversy

The next factor courts consider is the local interest in deciding local controversies.  *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007) (citing *Decker Coal*, 805 F.2d at 843).

Abercrombie argues that this factor weighs toward transfer because the majority of the incidents giving rise to this action occurred in the Central District.  (Motion at 11-12.)  Plaintiffs counter that this District has an equal interest due to the presence of Abercrombie stores in the Northern District and the fact that members of the putative class also reside here.  (Opp'n at 6.) While this factor is somewhat neutralized by the presence of Abercrombie stores in both districts,[4] the fact that the majority of events occurred in the Central District creates a greater interest in the

---

[4] Nothing in this Order suggests that tallying the number of stores in two given districts automatically yields a reliable measure of the districts' relative "connection" or "interest in" the litigation.  The analysis requires subtle, careful weighing, not a mechanical count.

9

controversy in that district. *See Vu*, 602 F. Supp. 2d at 1157 (finding that, while the transferee district's interest was not substantially stronger than the transferor's, it "nevertheless maintains stronger because the events at issue took place there"). The Court finds this factor to weigh in favor of transfer.

### 6. Relative Court Congestion and Time of Trial in Each Forum

The relative docket congestion of the respective forums may be relevant to the Court's decision on whether to transfer. *Ctr. for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, at *8 (N.D. Cal. March 17, 2011). "This factor examines whether a trial may be speedier in another court because of its less crowded docket. To measure congestion, courts compare the two fora's median time from filing to disposition or trial." *Id.* (internal quotation marks and citations omitted).

The parties submitted differing sets of data in support of their positions. Abercrombie cited data on the median time intervals from filing to disposition of civil cases in the district courts for the twelve-month period ending March 31, 2012. (Dkt. No. 12.) Plaintiffs submitted the same information for the period ending March 31, 2013. (Dkt. No. 21, Ex. A.) The Court considers the most recent set of data as more relevant. As of March 31, 2013, the median times from filing to disposition and filing to trial in the Northern District of California are 6.4 months and 27.5 months, respectively. (*Id.*) In the Central District, the median times from filing to disposition and filing to trial are 5.4 months and 20 months, respectively. (*Id.*) The net difference, then, is 1 month from filing to disposition and 7.5 months from filing to trial. The Court finds that there is no meaningful difference between the two districts' median resolution times. *See Hansell v. TracFone Wireless, Inc.*, No. C-13-3440 EMC, 2013 WL 6155618, at *5 (N.D. Cal. Nov. 22, 2013) (finding it "unclear" whether there was an appreciable difference in relative congestion where the median times to disposition and trial in the transferor district were 1.6 months longer and 14.8 months longer, respectively, than those in the transferee district). Therefore, this factor is neutral or weighs slightly in favor of transfer.

///

///

10

### 7. Balancing the Discretionary Factors

Balancing the relevant factors, only Plaintiffs' choice of forum weighs against transfer. However, this is afforded the lowest deference possible because this is a putative class action, the plaintiffs do not reside in the Northern District, and the Northern District's connection to the activities giving rise to the complaint is comparatively weaker than that of the Central District. The remaining factors are either neutral or weigh in favor of transfer, including the convenience of witnesses factor which is of utmost import. Based upon the relative balancing of each factor, the Court finds that Abercrombie has made a sufficiently strong showing of inconvenience to warrant transfer. *See Wilson*, 2011 WL 4345079, at \*6 (citing *Decker Coal*, 805 F.2d at 843).

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Transfer Venue to the Central District of California is **GRANTED**.

This Order terminates Docket No. 11.

The Clerk is directed to transfer the file in this case to the Central District of California.

**IT IS SO ORDERED**.

Date: February 14, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**