IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALMA BOJORQUEZ, JAKE VALLANTE, MATTHEW ALLAN and BRIELLE BRATTON, individually, and on behalf of all others similarly situated, | : : : : : | Case No. 2:16-cv-00551-MHW-EPD |
| | : | JUDGE MICHAEL H. WATSON |
| Plaintiffs, | : : | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| vs. | : : | |
| ABERCROMBIE & FITCH CO.; ABERCROMBIE & FITCH STORES, INC.; and DOES 1 through 10, inclusive, | : : : : | |
| Defendants. | : : | |
| And Related Case | | |
| ALEXANDER BROWN and ARIK SILVA, individually, and on behalf of all others similarly situated, | : : : : | Case No. 2:17-cv-01093-MHW-EPD |
| | : | JUDGE MICHAEL H. WATSON |
| Plaintiffs, | : : | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| vs. | : : | |
| ABERCROMBIE & FITCH CO.; ABERCROMBIE & FITCH STORES, INC.; and DOES 1 through 10, inclusive, | : : : : | |
| Defendants. | : : : | |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Representative Plaintiffs Jake Vallante, Matthew Allan, and Brielle Bratton in the matter

of *Bojorquez, et al. v. Abercrombie & Fitch Co., et al.*, case number 2:16-cv-00551-MHW-EPD

("*Bojorquez* action"), and Plaintiffs Alexander Brown and Arik Silva in the matter of *Brown, et*

*al. v. Abercrombie & Fitch Co., et al.*, case number 2:17-cv-01093-MHW-EPD ("*Brown*

action"), jointly with Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores,

1

Inc. ("Defendants" or "Abercrombie"), hereby move for approval of the parties' settlement of the claims asserted in these actions (a copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Randall B. Aiman-Smith, submitted herewith).

These cases, collectively brought on behalf of approximately 258,000 non-exempt, largely minimum-wage Abercrombie employees, allege that Abercrombie forced its employees to purchase clothing as a condition of their employment, and then refused to reimburse the attendant expense, causing the employees' wages to fall below the applicable minimum wage, in violation of the Fair Labor Standards Act and the laws of California, New York, Florida, and Massachusetts. The cases have been litigated for years and, after extensive written discovery, thirty-nine depositions, motion practice (including class certification in the *Brown* case), and mediation efforts, have been resolved on terms the parties strongly believe represent the fair, reasonable, and adequate resolution of this bona fide legal dispute. Accordingly, the parties respectfully request that this Court grant the parties' motion and issue an Order:

(1)    preliminarily approving the parties' Settlement Agreement as being fair, reasonable, and adequate;

(2)    preliminarily approving the form, manner, and content of the parties' proposed Class Notice and Claim Form;

(3)    setting the date and time of the final approval hearing;

(4)    provisionally certifying the New York, Florida, and Massachusetts, subclasses in the *Bojorquez* matter under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

(5)    preliminarily approving an FLSA collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b);

(6)    appointing Plaintiffs Jake Vallante, Matthew Allan, and Brielle Bratton as the class and collective action representatives in the *Bojorquez* matter and Plaintiffs Alexander Brown and Arik Silva as class representatives in the *Brown* matter, for settlement purposes; and

*LA 133453563v6*

(7)    appointing the law firm of Aiman-Smith & Marcy PC as class counsel.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Randall B. Aiman-Smith, the attached exhibits, and all other records, pleadings and papers on file in this action.

A proposed Order is submitted for the Court's consideration.

Respectfully submitted:

Dated: January 24, 2018

/s/  Randall B. Aiman-Smith
Randall B. Aiman-Smith (admitted Pro Hac Vice)
Aiman-Smith & Marcy, PC
7677 Oakport Street, Suite 1020
Oakland, California 94621
Telephone: 510-562-6800
Facsimile: 510-562-6830
Email: ras@asmlawyers.com

*Attorneys for Plaintiffs and the Class*

Dated: January 24, 2018

/s/  Mark D. Kemple
Mark Kemple (admitted Pro Hac Vice)
John R. Richards
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700
Facsimile: 310-586-7800
Email: kemplem@gtlaw.com
Attorney for Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc.

*Attorneys for Defendants*

*LA 133453563v6*

## I.    INTRODUCTION

Plaintiffs sued Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. ("Defendants" or "Abercrombie") in two cases, on behalf of putative classes of approximately 258,000 non-exempt, largely minimum-wage, Abercrombie retail employees.  In each case, Plaintiffs allege that Abercrombie forced its employees to purchase clothing as a condition of their employment, and then failed to reimburse the attendant expenses, thereby causing the employees' wages to fall below the applicable state and/or federal minimum wage. The *Brown* action, filed in California in 2013 and certified as a Rule 23 class action in July 2015, alleged that these practices violated California law.  The related and broader *Bojorquez* action, filed in California in 2015 and transferred to this Court in December 2015, alleged that the policies violate the Fair Labor Standards Act ("FLSA") and the laws of certain states.

Plaintiffs believe that *Brown* was properly certified and that they have a strong case on the merits.  Defendants adamantly deny that Plaintiffs' claims have merit and submit that even if they did, they could not be adjudicated on the merits on a class basis given the individualized proofs necessary on the elements of those claims.  Defendants contend that the central theory of Plaintiffs' case—the supposed "coerced" purchase of garments—turns on *why* a given class member bought a particular garment, a question that even in its certification order the *Brown* court conceded presented a "fairly individualized inquiry."  *Brown v. Abercrombie & Fitch Co.*, No. CV14-1242 (JGB) (VBKx), 2015 WL 9690357, at *20 (C.D. Cal. July 16, 2015).  They contend that, apart from posted policies stating that purchase of company clothing was not required, each purchase in question was accompanied by a verified statement by the employee that purchase was voluntary, and not at the direction of Abercrombie.  (*See, e.g.*, Declaration of Mark D. Kemple, ("Kemple Decl."), Ex. 4, Def. 5/17/17 Med. Brief, at Exs. 1-8.)  Defendants cannot conceive of a common proof set that could show on a class-wide basis that each class member (including those who never purchased Abercrombie clothing, and those who testified under oath they did not feel coerced to do so, and instead purchased items for personal use, for friends, and simply because they loved the clothes, which were offered at an enormous discount

1

to them) was somehow improperly coerced by Abercrombie to purchase company clothing. Thus, it is these two strong positions, which would require years of additional litigation, that support finding a compromise through settlement and approval thereof.

After years of extensive litigation, discovery, and mediation efforts, including thousands of pages of written discovery, thirty-nine depositions, class certification over vigorous opposition in the *Brown* action, and two in-depth mediation sessions and numerous follow-up discussions with highly respected mediator Hunter Hughes III, the parties reached a proposed Settlement Agreement ("Agreement") resolving both cases. (See Declaration of Randall B. Aiman-Smith ("Aiman-Smith Decl."), Ex. 1.)The Agreement offers twenty-five million dollars ($25,000,000) in consideration to the proposed settlement class and collective members.

As discussed herein, the settlement should be approved because it is a "fair, reasonable, and adequate" resolution of a bona fide legal dispute. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 619 (6th Cir. 2007) (hereinafter "*UAW*") (discussing approval of a class action settlement under Federal Rule of Civil Procedure 23); *see also Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, *3 (S.D. Ohio Dec. 2, 2016) (applying same factors to approve FLSA settlement).

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT EFFORTS.

### A.     Class and Collective Action Allegations and Defenses.

Plaintiffs in the *Brown* action, on behalf of approximately 62,000 non-exempt Abercrombie employees, allege that, as a matter of unwritten national policy, Abercrombie required its employees to purchase clothing as a condition of their employment and refused to reimburse them for those costs. Plaintiffs allege that this policy violates various California wage and hour laws, including those requiring employers indemnify employees for business expenses, pay minimum wage, and provide accurate wage statements. According to Plaintiffs, these violations give rise to claims for restitution, damages, liquidated damages, and statutory and civil penalties. Plaintiffs in the broader *Bojorquez* action assert similar claims on behalf of approximately 196,000 non-exempt Abercrombie employees in the rest of the country, alleging

that the same policies deprived them of reimbursement and compensation in violation of the FLSA and in violation of the wage and hour laws of New York, Florida, and Massachusetts. Plaintiffs' allegations are grounded on, among other things, statements by Abercrombie upper management that its employees are its primary marketing tool, formal and informal company systems "pushing" employee purchases, including emails from senior management and statements on training calls applying pressure on employees to purchase Abercrombie products.

Defendants vehemently deny Plaintiffs' allegations. As their attached mediation briefs discuss in detail, Defendants contend that the evidence—and particularly the evidence adduced after class certification in the *Brown* case—makes clear that neither *Brown* nor *Bojorquez* could be properly adjudicated on the merits—the elements of the claims—on a class basis. (*See* Kemple Decl., Exs. 3 & 4, Def. 5/17/17 Med. Brief and Def. 9/13/17 Med. Brief with exhibits.) Abercrombie's policies, which putative class members repeatedly received and acknowledged in numerous signed writings, including *every time they purchased Abercrombie clothing*, expressly state that employees are not required to purchase company clothing. (*See, e.g.*, *id.*, Ex. 3, Def. 5/17/17 Med. Brief at pp. 11-17 and Exs. 1-8; *id.* Ex. 4, Def. 9/13/17 Med. Brief at pp. 2-5, and Exs. A-H.) Further, Defendants assert that the testimony by putative class members, including some of those who provided declarations to support Plaintiffs' bid for class certification, makes clear that a very high percentage of class members did not feel they were required to purchase Abercrombie clothing, and that any such inquiry is itself highly individualized and not subject to common proof. (See *id.*, Ex. 4, Def. 9/13/17 Med. Brief at pp. 4-5, 13-26 and exhibits I-BB.) Defendants further argue that the fact that thousands of putative class members subject to these alleged "coercive" practice never made a purchase at all during their years of employment with Abercrombie, demonstrates that no common proof exists to show—on a class-wide basis—that purchases of clothing were coerced (rather than made for personal reasons).

Defendants further contend that even if a court could be convinced to attempt a class-wide trial of such issues, the damages and penalties available are a tiny fraction of what Plaintiffs imagine. Plaintiffs' theory of recovery included nearly all purchases of clothing; whereas

3

Defendant argued that items purchased with the subjective intent to use only outside work, clothing purchased to give as a gift, and any items in excess of a few hundred dollars, could not possibly constitute valid claims, since even assuming employees felt coerced to purchase enough Abercrombie clothing to wear to every shift, there is no reason for purchases in excess of that amount (particularly in light of the significant discount associates received). These reduced figures would have to be further reduced to account for the value the class member received, reducing the total to an insignificant figure. (*See* Ex. 4, Def. 9/13/17 Med. Brief at p. 30-34.)

### B. Procedural History, Mediations, and Resolution.

Plaintiffs filed the *Brown* action on September 16, 2013, in Alameda County (California) Superior Court. On November 8, 2013, Abercrombie removed the action to the United States District Court for the Northern District of California (Case no. 4:13-cv-05205-YGR) and, on February 14, 2014, the case was transferred to the United States District Court for the Central District of California, *see Brown v. Abercrombie & Fitch Co.*, N.D. Cal. No. 4:13-CV-05205 YGR, 2014 U.S. Dist. LEXIS 19414 (Feb. 14, 2014), where it was assigned the new case number 2:14-cv-01242-JGB-VBK.

Following extensive discovery, Plaintiffs moved for class certification, which Abercrombie opposed. On July 16, 2015, the Court in the *Brown* action certified four classes pursuant to Rule 23. *See Brown v. Abercrombie & Fitch Co.*, C.D. Cal. No. CV 14-1242 JGB (VBKx), 2015 U.S. Dist. LEXIS 176214 (July 16, 2015).

Plaintiffs thereafter filed the similar, but broader, *Bojorquez* action on December 15, 2015, in the United States District Court for the Central District of California (Case No. 2:15-cv-09651-FMO-AGR), alleging violations of the FLSA on behalf of a nation-wide class, as well as violations of the labor laws of three states – California, Massachusetts, and Florida – each on behalf of a state-wide class. Plaintiffs filed a First Amended Complaint on February 26, 2016.

On June 16, 2016, the California federal Court found the *Bojorquez* action related to the *Brown* action and ordered it transferred to this Court, noting that the actions "clearly share[] a common nucleus of operative facts" and involve "the same transaction or series" of transactions.

*Bojorquez v. Abercrombie & Fitch, Co.*, 193 F.Supp.3d 1117 (C.D. Cal. 2016).

On July 28, 2016, Plaintiffs filed a Second Amended Complaint in the *Bojorquez* action expanding the lawsuit to add a putative class of New York employees for violations of New York state law, based on the same allegations regarding unreimbursed and compelled purchases. [*Bojorquez v. Abercrombie & Fitch Co.*, Case No. 2:16-cv-551-MWH-TPK Dkt. No. 48-2.] In Spring 2017, the actions were stayed to pursue mediation with Hunter Hughes III [*id.*, Dkt. No. 59; *Brown,* Case No. 2:14-cv-01242-JGB-E, Dkt. No. 136], and on May 23, 2017, the parties had a productive, full-day mediation session, but the case did not settle. (Aiman-Smith Decl, ¶2.) The parties requested the stay to remain in place in *Bojorquez*, and on June 6, 2017, the Court lifted the stay in *Brown* and the parties commenced merits discovery. [*Brown,* Case No. 2:14-cv-01242-JGB-E, Dkt. No. 139.] Abercrombie propounded written discovery and took the deposition of ten additional class members, bringing the total number of deponents in that action to thirty-nine. (Aiman-Smith Decl, ¶4.) In addition, the parties collected and exchanged the declarations of 147 class and putative class members. (*Id.*)

On September 18, 2017, the parties engaged in another full-day mediation with Mr. Hughes and signed a Memorandum of Understanding. (*Id.* ¶5.) That was followed by three months of negotiations between the parties, calls with the mediator, and a third in-person negotiation session, this time in Los Angeles. (*Id.* ¶¶ 6, 7.) After these extensive negotiations, the parties finally reached agreement, and on December 12, 2017, executed a final Settlement Agreement (*id.*, ¶¶ 8, 9; Ex. 1), which takes into consideration the disputed potential liability, the wide range of potential recovery, and the uncertainties and expense of protracted litigation. The parties believe, and the mediator agreed, that it is in the best interests of all parties and the putative settlement class and collective members, to resolve the actions on these terms.

On December 12, 2017, the parties in *Brown* stipulated that the action be transferred to this Court pursuant to 28 U.S.C. § 1404(a), and the Central District of California court did so the next day. *See* Case No. 2:14-cv-01242-JGB(Ex), Docket No. 152-153. That stipulation and Order correctly notes that these actions and the settlement of them, are inextricably intertwined:

*LA 133453563v6*

The various plaintiffs in each of these actions are represented by the same counsel, as are the Defendants (who are identical in each action). As this Court ruled on June 16, 2016, the *Brown* and *Bojorquez* Actions:

- "clearly share[] a common nucleus of operative facts"; and

- involve "the same transaction or series" of transactions.

[*Bojorquez* Action, Case No. 2:15-cv-09651-JGB-AGR (C.D. Cal.), Dkt. No. 38.] Though the *Bojorquez* action originally was pending before this Court, and related to the *Brown* action, the *Bojorquez* action was transferred from this Court to the United States District Court for the Southern District of Ohio, within the only State in which Defendants are subject to general jurisdiction (and can be sued nationally and for non-forum based activities). [*Id.*]

The *Brown* action is the smaller of the two actions. It involves persons who worked for Defendants in California – though many of the persons in the *Brown* action also are putative class members in the *Bojorquez* action, as they also worked for Defendants in a State other than California within the past seven years. In total, the *Brown* action involves approximately 62,000 persons.

In contrast, the *Bojorquez* action involves putative class actions under state laws in New York, Florida and Massachusetts, and includes a national FLSA collective action covering the remaining States. In total, the *Bojorquez* action pertains to more than 176,000 persons, also including approximately 94,000 putative class members. As such, it is more than 2.5 times the size of the *Brown* action.

When combined, these actions allege the same claimed wrongdoing across all 50 States.

Given the integrated nature of the claims within these actions (indeed, as noted, many persons are parties or putative parties to both of these actions), the parties have negotiated a <u>single, integrated, nationwide settlement of these actions</u>. [*Id.* (emphasis in original).]

On December 14, 2017, the transfer of the *Brown* case was complete and case number 2:17-cv-01093-MHW-EPD was assigned. [*Brown v. Abercrombie & Fitch Co.*, Case No. 2:17-cv-01093-MWH-EPD, Dkt. No. 154.] On December 19, 2017, the *Brown* and *Bojorquez* cases were related and assigned to Magistrate Judge Elizabeth Preston Deavers for further proceedings. [*Id.*, Dkt. No. 157.] On December 20, 2017, the *Brown* and *Bojorquez* cases were stayed pending approval of the final Settlement Agreement. [*id.*, Dkt. No. 158; *Bojorquez v. Abercrombie & Fitch Co.*, Case No. 2:16-cv-551-MWH-EPD, Dkt. No. 72.]

## III. THE PROPOSED SETTLEMENT.

Because the Settlement Agreement (Aiman-Smith Decl., Ex. 1) contains the full terms of the settlement for the Court's review, only the most salient points are set forth here. Briefly, the

6

Agreement provides for a fund of twenty-five million dollars ($25,000,000) allocated as follows: (a) $16,677,500 for payment of timely claims made by class/collective members under the terms of the Settlement, including employer payroll taxes on such payments in exchange for a Release given by Settlement Members (25% of payment made to Class and Collective Members shall be deemed wages, 75% will be deemed reimbursement, interest, and penalties); (b) $7,500,000 for payment of class counsel's attorney fees; (c) $250,000 for class counsel's costs; (d) $35,000 total for class representative enhancement payments; (e) $500,000 for claims administration costs; and (f) $37,500 to the State of California for its 75% share of the $50,000 of the settlement fund allocated for settlement of the Private Attorney General Act ("PAGA") claims (Cal. Labor Code §2699(i)). Sums not awarded by the Court will be retained by Defendant.

**Settlement Classes.** Due to the combination of state law and FLSA claims, the settlement classes of the *Brown* and *Bojorquez* cases include approximately 258,000 individuals (176,000 putative class members/82,000 FLSA collective members) based on these definitions:

(1) All persons employed by Abercrombie as non-exempt, hourly, non-management employees at an Abercrombie & Fitch, Abercrombie Kids, Hollister, and/or Gilly Hicks store in New York, Florida, Massachusetts, or California during all or part of the applicable "Class Period" for the state in which the individual was employed as set forth below:

in New York, for any time period between December 15, 2009, and [*date of preliminary approval*];

in Florida, for any time period between December 15, 2010, and [*date of preliminary approval*]];

in Massachusetts, for any time period between December 15, 2012, and [*date of preliminary approval*];

in California, between September 16, 2009, and [*date of preliminary approval*].

(2) All persons employed by Abercrombie in the United States as non-exempt, hourly, non-management employees at any Abercrombie & Fitch, Abercrombie Kids, Hollister, and/or Gilly Hicks store at any time between March 24, 2014, and [*date of preliminary approval*] (the "FLSA Collective Action Period"), excluding those individuals who worked for Abercrombie exclusively at a store within the State of California during that time period.

**Notice.** Notice will be provided through direct mail notice and will include various forms (*see* Aiman-Smith Decl., Ex. 1 at Exs. A – E). The Notice advises the settlement class and

7

collective members of the material terms of the settlement (including the full Release language), the procedure, deadlines, and instructions for how to participate in, opt out, or object to the settlement. It provides detailed notice to the class and collective members, including:

**Claim Process.** Class and collective members will receive with the Notice a Participation Form post-card, which they will sign and return. Thereafter, participating members will log in to the settlement website to select from a list of items they purchased while employed by Abercrombie the items they contend they were forced to purchase.[1]

**Settlement Payment Procedure.** Individual settlement payments will be made out of the net settlement proceeds of $16,677,500 pursuant to the calculations in the Agreement, and will be funded (along with the amounts for payroll taxes, class counsel's attorney fees, class counsel's costs, class representative enhancement payments, and PAGA payments to the LWDA) within 10 calendar days of the effective date, if the settlement becomes final. Settlement payments will be distributed by the claims administrator within 20 days after funding. Ten days after distribution, Defendants will pay administrative costs up to $500,000.

**Opting Out.** Settlement Members who wish to be excluded from the settlement must submit an Election to Opt-Out Form (enclosed in the Notice Packet) to the Claims Administrator.

**Objecting.** A settlement member may object to any provision of the settlement by following the procedure set forth in the Notice Packet. Any settlement member who does not object pursuant to that procedure will be deemed to have waived his or her objections.

**Incentive Award to Class Representatives.** At final approval, Plaintiffs will apply to the Court and present evidence in support of named representative incentive awards for the named Plaintiffs totaling up to $35,000. Defendants do not oppose this request.

**Attorneys' Fees and Costs.** At final approval, class counsel will apply to the Court for a total award of $7,500,000, which constitutes thirty percent (30%) of the common settlement amount plus costs. Plaintiffs will present evidence at final approval that the fee is reasonable

---

[1] Given the number of claimants, and that purchase logs are lengthy, individually printing and mailing of each log is impractical. Instead, each claimant is provided a link to his/her log.

under the applicable law. Class counsel will also apply for litigation costs it incurred in the litigation and settlement of the cases, not to exceed $250,000. Defendants do not oppose this request. The amount of fees and costs sought will be disclosed in the Class Notice.

**Claims Administration Costs.** Administration costs include the costs arising from creating a website, printing, distributing, and tracking documents for the settlement, and executing the other duties set forth in the Agreement. Costs exceeding $500,000, if any, will be split evenly between Defendants and class counsel, unless otherwise agreed.

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE PRELIMINARY APPROVAL.

The parties respectfully request that the Court enter the accompanying proposed order preliminarily approving the parties' settlement. As discussed herein, the proposed settlement is the fair, reasonable, and adequate resolution of a bona fide dispute, and the settlement classes and FLSA collective class can and should provisionally be certified for settlement purposes only.

### A.  The Settlement Is a Fair, Reasonable, and Adequate Resolution of Bona Fide Legal Dispute.

#### 1.  Legal Standard: The Seven "Fairness" Factors.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class-wide basis. The rule outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified—*i.e.*, whether it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); Manual for Complex Litigation (Third) § 30.41.

The preliminary determination by the court does not rise to that of "a fairness hearing … rather [it] is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to … the fairness hearing." *Armstrong Bd. Of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (citation omitted) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd sub nom. California Pub.*

*Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999). "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982), *cert. denied*, 459 U.S. 1217 (1983)). "Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F.Supp. 1, 7 (N.D. Ohio 1982)).

Whether the proposed settlement is sufficiently "fair, reasonable, and adequate" to fall "within the range of possible approval" turns on seven factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631; *Enter. Energy Corp. v. Columbia Gas Trans. Corp.*, 137 F.R.D. 240, 245 (S.D. Ohio 1991) (citing *Williams v. Vukovich*, 720 F.3d 909, 922 (6th Cir. 1985); *Thompson v. Midwest Found. Indep. Physicians Ass'n,* 124 F.R.D. 154, 157 (S.D. Ohio 1988); *Bronson v. Bd. Of Educ. Of the City Sch. Dist. Of the City of Cincinnati*, 604 F.Supp. 68, 73 (S.D. Ohio 1984)). These factors are applied by courts in granting a settlement *final* approval, but they drive the analysis at this stage of whether a settlement falls "within the range of possible approval."

The analysis for approving settlements of FLSA claims is similar. Under the FLSA, a court must conclude that the proposed settlement is "fair, reasonable, and adequate," and "resolves a bona fide dispute over the FLSA claims asserted." *Vigna*, 2016 WL 7034237, at *3. The analysis considers the same factors as the Rule 23 analysis, above. *See Clevenger v. JMC Mechanical, Inc.,* No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (cit. omitted). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v.*

*Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

"If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues'…that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* at *2.

Here, each of the seven factors above make clear that the settlement is a fair, reasonable, and adequate resolution of a bona fide dispute.

### 2.      Each Factor Favors Approval.

#### a.      No Indicia of Fraud or Collusion Exists.

The parties aggressively litigated the *Brown* case for over four years, engaging in extensive discovery and motion practice, including contested hearings, and litigated the *Bojorquez* action for two years, exchanging large amounts of data regarding the claims asserted. A settlement was reached only after arm's-length negotiations during two full-day mediation sessions with Mr. Hughes, in Atlanta, another full-day in-person meeting between counsel in Los Angeles, and three months of telephone and email negotiations.   (Aiman-Smith Decl. ¶¶ 3-8.)

#### b.      The Complexity, Expense, and Likely Duration of the Litigation Favor Approval.

Plaintiffs face the complex task of attempting to certify three separate state classes and a FLSA collective action in *Bojorquez*, and maintaining class certification status in *Brown*—a task that Defendants believe cannot be done.  Plaintiffs assert that the certification process on the merits of *Bojorquez* would require Plaintiffs to develop consistent testimony of current and former employees located around the country to back their theory and marshal it to demonstrate violation of the nuanced, multi-element requirements of the FLSA and the labor laws of New York, Florida, and Massachusetts.  Regarding *Brown*, merits discovery would continue, and Plaintiffs would be required to oppose Defendants' contemplated motion for decertification and/or motion for summary adjudication.  Even assuming Plaintiffs were successful in each of these efforts, they would have to manage a complex trial in each case.

The expenses of ongoing litigation are significant.  The smaller *Brown* case (with 62,000 putative class members) has required 39 depositions in two states, thus far (15 more have been

11

authorized by the Court), at significant expense in attorney time and related costs. The over-three-times-larger nationwide *Bojorquez* case (including 196,000 class and collective members) could reasonably require over 100 additional depositions across the country, a daunting further investment of attorney time and litigation costs. Indeed, even ancillary costs of prosecuting such large cases are significant. For example, in *Brown*, the cost of mailing the Class Notice was over $32,000. (Aiman-Smith Decl. ¶10.) The cost in of a Notice in *Bojorquez* would be far greater.

Finally, the litigation—already over four years old—is likely to continue for years. The *Brown* case has been vigorously litigated for over four years; the *Bojorquez* action for over two years. Both cases are likely to take several more years of highly-contested litigation to even reach trial, without accounting for post-trial motion practice and appeals.

### c. The Amount of Discovery Taken Favors Approval.

The parties in *Brown* and *Bojorquez* produced and studied more than 66,000 pages of documents. (Aiman-Smith Decl. ¶11.) They took 39 depositions in the *Brown* case and litigated the matter through class certification and into merits discovery. In *Bojorquez*, Plaintiffs prepared a FLSA motion for conditional certification. (*Id.* ¶12.) Mediation sharpened the parties' understanding of the case. Plaintiffs' expert analyzed hundreds of thousands of rows of purchase data and payroll records for settlement class and collective members to calculate a detailed damages analysis for mediation (*id.* ¶13), and Defendants' counsel conducted a detailed exposure analyses based on Plaintiffs' claims. (*See* Kemple Decl., Ex. 4, Def. 9/13/17 Med. Brief at pp. 30-45.) The parties marshalled that data and drafted and exchanged over 196 pages of single-spaced mediation briefs (not including exhibits) and engaged in two full-day mediation sessions, as well as subsequent conference calls and meetings, where their theories and exposure were tested, revised, and refined. In sum, the parties developed a thorough understanding of the merits of their claims and defenses, allowing both sides to appreciate and consider the risks of further litigation and accurately value the case. (Aiman-Smith Decl. ¶16.)

### d. The Chance of Success on the Merits Favors Approval.

Plaintiffs are confident that they will obtain and maintain certification in both cases and

believe they would prevail as to liability, based in part on the certification order in *Brown*. Defendants, however, raised numerous arguments that could undo certification in *Brown* and defeat it in *Bojorquez*, and/or could potentially defeat liability, or at least significantly reduce damages. (*See e.g.,* Kemple Decl., Ex. 4, Def. 9/13/17 Med. Brief at pp. 2-26.) For example, Defendants have noted the pitfalls of Plaintiffs' burden to establish with common proof the fact that purchases were "compelled" in light of (a) written policies stating employees are not required to purchase clothing; (b) handbooks and signed handbook acknowledgments stating employees are not required to purchase clothing; (c) signed point-of-sale acknowledgments by employees representing that the purchases made were not required by the company; (d) statements on employee cards used to make the supposed "compelled" purchases stating employees are not required to purchase clothing; (e) receipts received by each class member at purchase stating employees are not required to purchase clothing; (f) the fact that thousands of employees never made a purchase at all during their years of employment, despite the supposed "policy" requiring it; (g) direct testimony by employees stating they did not feel they were required to purchase clothing from the company; and (h) direct testimony that employees made purchases for personal, non-work reasons to take advantage of their up to 50% employee discount. Thus, Defendants contend that Plaintiffs face an uphill battle getting to trial and an insurmountable obstacle at trial. Plaintiffs vigorously disagree. The parties' Settlement Agreement accounts for the parties' understanding of these strengths and weaknesses.

Regardless of who might prevail on these issues at trial, it is not necessary for the Court to settle questions of law and fact at this stage. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.") (citation omitted). In assessing the settlement, "the Court should balance the benefits afforded to members of the Class, and the

13

immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962 *5-6 (S.D. Ohio Aug. 18, 2009) (internal citations omitted). "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.'" *Id.* at *6 (quoting *West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F. 2d 1079, 1085-86 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971)). Here, the substantial benefits provided for the Settlement Class and Collective Members balanced against the uncertainties of trial weighs in favor of settlement approval.

### e. The Opinions of Class Counsel Favor Settlement.

Plaintiffs' counsel have represented employees in numerous class actions asserting violations of labor law, many resulting in published decisions. (Aiman-Smith Decl. ¶¶ 15-19; Ex. 2, Curr. Vitae). Plaintiffs' attorneys are well qualified to conduct the proposed litigation and to assess its settlement value. Based on that experience, Plaintiffs' counsel believe the proposed settlement is fair and adequate to Settlement Class/Collective Members. *See, e.g., Williams,* 720 F.2d at 922-923 ("It is well settled that, in approving a class action settlement, the court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case that "the endorsement of the parties' counsel is entitled to significant weight."). Given the strength of Plaintiffs' case, Abercrombie's defenses, and the risk, expense, complexity and duration of further litigation, the proposed settlement is fair.

### f. The Class Reaction Is Expected to Favor Settlement.

The settlement affords class/collective members an opportunity to raise objections prior to the final approval hearing. The parties believe that the Agreement is fair and adequate, and that no objections will be raised, they will address any objections at the final approval hearing.

### g. The Public Interest Favors Settlement.

The settlement "serves the public interest also by conserving the resources of the parties and the Court, and promoting the 'strong public interest in encouraging settlement of complex

14

*LA 133453563v6*

litigation and class action suits.'" *UAW*, 2006 WL 891151, at *22 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).  Further, though no government entity is a party, notice of settlement of the PAGA claims will be provided to the State of California.

In sum, each factor demonstrates that the settlement is fair, reasonable, and adequate.

**B.  The Court Should Provisionally Certify the Settlement Classes.**

"Courts have relatively regularly certified classes pursuant to Rule 23 in cases presenting hybrid class and collective allegations...." *Filby v. Windsor Mold USA, Inc.*, No. 3:13 CV 1582, 2015 WL 1119732, at *2 (N.D. Ohio Mar. 11, 2015) (citing *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 187 (S.D. Ohio 2012); *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 638 (S.D. Ohio 2008)). Provisional certification for the purposes of settlement is different from certification for trial. Whereas the latter requires an inquiry into whether the merit of each element of the claims could be tried on a class basis, to certify a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.132 (4th ed. 2004).  The risk that a claim might not be certified for trial on the merits (or maintain certification) militates in favor of certification for settlement because the settlement affords relief to the class members they might otherwise not obtain at all.  Courts routinely approve class-wide settlements where the ability to obtain certification is dubious.[2]

To establish provisional certification. Plaintiffs must demonstrate that each element of

---

[2] *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) ("predominance" and "manageability" concerns under Rule 23(b)(3) intertwined and approving class settlement because the "predominance defect" that barred class treatment on the merits was "no longer fatal"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class despite serious questions as to whether the claims could be certified on their merits; "the fact of settlement is relevant to the decision to certify a class"; "Courts have, thus, certified classes at the settlement stage noting that such a certification does not present the same problems that certification of a litigation class proposing the same class definition would present"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying a settlement class; "manageability problem" on merits of claims was rendered moot by the settlement); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying settlement class despite having previously denied certification on the merits; settlement mooted individualized issues that had precluded certification on the merits).

Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied. *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14-CV-00142-SJD, 2014 WL 4816698, at *2 (S.D. Ohio Sept. 18, 2014); *Swigart*, 288 F.R.D. at 182. "'[W]hen there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class.'" *Swigart*, 288 F.R.D. at 182 (quoting *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D.Minn.1990)).

The proposed settlement classes meet the foregoing requirements. Accordingly, Plaintiffs request that the Court conditionally certify the classes identified in Part III, above.

### 1. The Settlement Classes Are Sufficiently Numerous.

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1); *Swigart,* 288 F.R.D. at 182 (finding numerosity satisfied by proposed class of 350 individuals); *see also Cansol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"). The California class contains 62,000 members. The proposed New York class contains approximately 38,000 members. The proposed Florida class contains approximately 39,000 members. The proposed Massachusetts class includes approximately 7,100 members. Numerosity is satisfied.

### 2. The Settlement Classes Resolve Common Questions.

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." The class members' claims must depend on a "common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 27 2541, 2551 (2011). Plaintiffs need only show that there is a "single significant question of law or fact." *Id.* The requirement is construed liberally, and commonality "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183 (quoting *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

Here, because the parties have resolved their disputes, they will not need to prove any individualized issues relating to liability—*i.e.*, the merits of the claims themselves. As a result, the facts that define the Settlement Class satisfy Rule 23(a)(2)'s commonality requirement.

*LA 133453563v6*

Moreover, Plaintiffs contend the commonality requirement is readily satisfied here, given their assertions of common law and fact on these claims.[3]

### 3. The Claims of the Named Plaintiffs Are Typical of the Claims of Members of the Settlement Classes.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Swigart,* 288 F.R.D. at 185 (quoting *Little Caesar Entpr. Inc. v. Smith*, 172 F.R.D. 263, 243 (E.D. Mich. 1997)). In other words, it must be true that "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because each representative Plaintiff in *Bojorquez* had a similar position and has the same interest as every settlement class member: recovering unpaid minimum wages, expense reimbursements, penalties, and interest.

### 4. The Representative Parties Will Fairly and Adequately Protect the Interests of the Settlement Classes.

Rule 23(a)(4) requires the Court to find that the "representative parties will fairly and adequately protect the interests of the class." This turns on whether the named plaintiffs and their counsel: (1) have conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *See Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Id.* (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

---

[3] These include whether, "despite Defendants' formal written policy of not requiring employees to purchase or wear Abercrombie clothes, managers coerce store employees to purchase Abercrombie clothing, particularly AAA clothing" and, further, whether some or all of those employees "may have suffered an additional violation of their right to earn at least minimum wage." *Brown,* 2015 WL 9690357, at *11.

*LA 133453563v6*

Here, Plaintiffs maintain and represent that no conflicts of interest as between counsel and the named Plaintiffs and any members of the settlement class.  (Aiman-Smith Decl. ¶18.) No subclasses with potentially divergent interests exist, and Plaintiffs and the settlement class share the common interest of challenging the legality of Defendants' policies.  All agree, including Defendants, that Plaintiff retained experienced and well-regarded counsel who have litigated this case vigorously and in good faith on behalf of the entire class.

### 5.  The Settlement Satisfies the Predominance and Superiority Requirements of Rule 23(b).

Rule 23(b)(3) poses two inquiries: (1) whether questions of law or fact common to the class members predominate over questions affecting only individual members, and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  As noted above, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."  *Amchem Prods., Inc.*, 521 U.S. at 620.

Here, the parties agree for purposes of this settlement only that certification of the Settlement Class is appropriate under Rule 23(b)(3) because: (1) the settlement obviates the litigation of individual liability and damage issues, (2) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, [(3)] and ... a class action is superior to other available methods for the fair adjudication of the controversy."  See Fed. R. Civ. P. 23(b)(3).  As such, conditional class is proper.

Class treatment is also the superior method for adjudicating these claims.  "[F]ederal policy favor[s] settlement of class actions…."  *UAW*, 497 F.3d at 632 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir.2004)).  Moreover, as the *Brown* court observed, "[t]here is no evidence that individual class members have an interest in individually controlling their cases. The damages suffered by each class member are not large, class members may fear reprisal in pursuing individual claims against their employer or former employer, and individual litigation against a well-funded defendant would be cost prohibitive. … In light of the

large number of potential class members and the relatively small monetary value of their individual claims ... a class action is a superior method for resolving this case." *Brown*, 2015 WL 9690357, at \*21. Any difficulties in managing a class trial are obviated by this settlement.

### C.    The Court Should Certify The FLSA Collective for Settlement Purposes.

Conditional certification of a FLSA collective class for settlement purposes requires a lower showing than Rule 23, and it should be granted here. Pursuant to 29 U.S.C. § 216(b), Plaintiffs must show that all members of the collective action: (1) are "similarly situated" with respect to a company-wide unlawful policy or practice, and (2) affirmatively consent to join. *See Lemmon v. Harry & David Operations, Inc.*, No. 2:15-CV-779, 2016 WL 234854, at \*2 (S.D. Ohio Jan. 20, 2016) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Regarding the first requirement, the FLSA collective members (those working in Abercrombie's stores nationwide, excluding California) are similarly situated. Each is a non-exempt, minimum-wage or low-wage-earning employee—all of whom had same or similar job titles and responsibilities—subject to Abercrombie's national alleged practice that required the purchase of clothing as a condition of the job, a practice that allegedly violated the FLSA requirement that wages be paid "finally and unconditionally." *See* 29 CFR § 531.35. As for affirmative consent, the Agreement requires collective members to return a participation form to participate. Given the parties' Agreement, both requirements are met for settlement purposes.

### D.    The Proposed Notice Is Reasonable and Should Be Approved.

Rule 23(e)(1) requires that Notice must be provided "in a reasonable manner." Courts have interpreted this provision to find that Notice must apprise the Settlement Class and Collective Members sufficiently "so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW*, 497 F.3d at 630; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (Class Notice is constitutionally valid if it is reasonably certain to inform those affected and is reasonably calculated to reach class members). Further, due process is satisfied when a descriptive notice is sent by first-class mail to those affected by the settlement. *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 812 (1985).

The proposed Notice (Aiman-Smith Decl., Ex. 1, Exhibits A-E) satisfies these requirements. The parties have agreed to use Dahl Administration, Inc. ("Dahl") to send the Notice and administer the settlement, the same firm that processed the Class Notice in *Brown*. Notice packets will be sent by first-class mail to all settlement class and collective members. The Notice advises members of the material terms and provisions of the settlement, the procedure and deadlines for participating in the settlement, their rights with respect to the settlement, and instructions for opting out or objecting to it. The Notice will also disclose the fees and costs sought by counsel and proposed incentive awards.

**E.    Setting the Final Approval Hearing.**

The parties request that the Court approve the schedule set forth in the Agreement, which provides that the final approval hearing will take place no sooner than 143 days after the Order granting preliminary approval, subject to the Court's approval and on a date of its choosing:

| | |
|---|---|
| Deadline for Def. to provide class list | **28** days after preliminary approval |
| Deadline for claims administrator to mail the notice | **10** days after its receipt of the class list |
| Deadline to file claims, opt-out, or object | **60** days after mailing of the notice |
| Proposed final approval hearing | **143** days after preliminary approval |

## V.    CONCLUSION

Because the proposed settlement is fair, reasonable, and advantageous to the proposed settlement class and collective members, the parties respectfully request that the Court grant this Motion and sign the accompanying proposed preliminary approval order.

Dated: January 24, 2018                    Respectfully submitted:

/s/ Randall B. Aiman-Smith                 /s/ Mark D. Kemple
Randall B. Aiman-Smith                     Mark D. Kemple
Aiman-Smith & Marcy, PC                    John Richards
7677 Oakport Street, Suite 1020            Greenberg Traurig, LLP
Oakland, California 946211840              Century Park East, Suite 1900
Telephone: 510-562-6800                    Los Angeles, California 90067
Facsimile: 510-562-6830                    Telephone: 310-586-7700
Email: ras@asmlawyers.com                  Facsimile: 310-586-7800
                                           Email: kemplem@gtlaw.com
*Attorneys for Plaintiffs and the Class*   *Attorneys for Defendants*

20