## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Alma Bojorquez, Jake Vallante,
Matthew Allan and Brielle Bratton,
individually, and on behalf of all
others similarly situated,

      Plaintiffs,

vs.

Abercrombie & Fitch Co.;
Abercrombie & Fitch Stores, Inc.;
and Does 1 through 10, inclusive,

      Defendants.

*and Related Case*

Alexander Brown and Arik Silva,
individually, and on behalf of all
others similarly situated,

      Plaintiffs,

vs.

Abercrombie & Fitch Co.;
Abercrombie & Fitch Stores, Inc.;
and Does 1 through 10, inclusive,

      Defendants.

Case No. 2:16-cv-551

Judge Michael H. Watson

Magistrate Judge Elizabeth
Preston Deavers

Case No. 2:17-cv-1093

Judge Michael H. Watson

Magistrate Judge Elizabeth
Preston Deavers

## OPINION AND ORDER

Representative Plaintiffs Jake Vallante, Matthew Allan, and Brielle Bratton

in the matter of *Bojorquez, et al. v. Abercrombie & Fitch Co., et al.*, case number

2:16-cv-551 ("Bojorquez Case"), and Representative Plaintiffs Alexander Brown

and Arik Silva in the matter of *Brown, et al. v. Abercrombie & Fitch Co., et al.*,

case number 2:17-cv-1093 ("Brown Case") (collectively "Named Plaintiffs," and together with the class members "Plaintiffs"), move for final approval of attorney's fees, litigation costs, and class incentive compensation. ECF No. 182. Plaintiffs and Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. ("Defendants") move for final approval of the parties' settlement of the claims asserted in these two cases. ECF No. 180.

The Court previously granted preliminary approval of the settlement, which included: a preliminary determination that the Settlement Agreement is fair, reasonable, and adequate; provisional certification of the Florida, Massachusetts, California, and New York subclasses under Rule 23 for settlement purposes only; preliminary approval of a collective action for settlement purposes under 29 U.S.C. § 216(b); and approval of Aiman-Smith & Marcy PC as Class Counsel. ECF No. 171.

For the following reasons, the Court **GRANTS** final approval of the Settlement Class and the Settlement Agreement and **GRANTS** Class Counsel's motion for attorney's fees.

## I.

These cases allege that Abercrombie forced its employees to purchase clothing as a condition of their employment without reimbursement, which caused employees' wages to fall below minimum wage in violation of the Fair Labor Standards Act ("FLSA") and the laws of California, New York, Florida, and Massachusetts. Mot. 2, ECF No. 180. This case has been litigated for years in

multiple venues; extensive discovery has been conducted including dozens of depositions; motions have been fully briefed, including a motion for class certification in the Brown Case; and, after significant mediation efforts, the parties have reached what they believe to be a fair, reasonable, and adequate resolution of the cases.

After preliminary approval, 364,474 notices were sent out via First-Class U.S. Mail: 149,709 to potential FLSA plaintiffs and the remainder to class or putative class members in California, New York, Florida, and Massachusetts. Kratz Aff. ¶ 6, ECF No. 180-2. The Claims Administrator, Dahl Administration, LLC ("Administrator") received 386 requests for exclusion from the class actions and 1,131 opt-ins to the FLSA claims. *Id.* at ¶¶ 7, 10. No objections were made to the settlement. Therefore, the final settlement class consists of approximately 214,000 people in California, New York, Florida, and Massachusetts who worked in Defendants' stores and who did not opt out of the settlement. The FLSA collective action consists of 1,131 people in the other forty-six states who affirmatively opted in to this settlement to resolve FLSA claims.

The Settlement Agreement creates a $25,000,000 settlement fund for the benefit of both class and collective members. This settlement fund is broken down as follows: up to $16,677,500 for payment of timely claims made by class/collective members; up to $7,500,000 for payment of class counsel's attorney's fees; $250,000 for class counsel's costs; $35,000 for class representative enhancement payments; $500,000 for claims administration costs;

and $37,500 to the State of California for its 75% share of the $50,000 settlement fund allocated for settlement of the Private Attorney General Act ("PAGA") claims. Any amount that is not awarded from the settlement fund, including amounts for claims not timely made or attorney's fees not awarded, will be returned to Defendants.

Because the settlement is "claims-made," meaning amounts are only paid upon timely claims being submitted by class members, the actual payout under the settlement agreement is much lower than the $16,677,500 theoretically available to pay claims. 31,649 class and collective members submitted claims. Mot. for Approval 2, ECF No. 180. The total amount of purchases these class and collective members claimed they were compelled to buy totaled $6,403,734.32. *Id.* at 10. This amount was further reduced by 72.8% pursuant to the terms of the Settlement Agreement.[1] Therefore, the total payment to the participating class and collective members totals $1,742,590.58.

A fairness hearing was held on September 12, 2018. No objectors have contacted the Court or appeared at the hearing.

---

[1] The total claims submitted were multiplied by a "Covered Item Payout Rate" ("CIPR"), which was calculated by dividing the net settlement fund of $16,677,500 by the total paid by all potential class and collective members for eligible clothing at Defendants' stores ($61,287,061). This resulted in a CIPR of 27.2%. Mot. for Approval 11, ECF No. 180.

II.

Plaintiffs seek final certification of the class and collective class and final approval of the settlement.  The Court begins by issuing a final certification of the following Rule 23 class:[2]

> All persons employed by Abercrombie as non-exempt, hourly, non-management employees at an Abercrombie & Fitch, Abercrombie Kids, Hollister, and/or Gilly Hicks store in New York, Florida, Massachusetts, or California during all or part of the applicable "Class Period" for the state in which the individual was employed as set forth below:
>
> in New York, for any time period between December 15, 2009, and February 16, 2018;
>
> in Florida, for any time period between December 15, 2010, and February 16, 2018;
>
> in Massachusetts, for any time period between December 15, 2012, and February 16, 2018;
>
> in California, between September 16, 2009 and February 16, 2018.

Mot. for Final Approval 7, ECF No. 180.

## A.    Class Certification Under Fed. R. Civ. P. 23

The Court retains broad discretion in determining whether an action may be certified as a class action but must first perform a "rigorous analysis" of the requirements under Federal Rule of Civil Procedure 23.  *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (internal quotation marks omitted).  Rule 23(a)

---

[2] The California class action was previously certified in the Brown Case, but the parties have sought certification of one Rule 23 class for settlement purposes.  Brown Case, ECF No. 108.

establishes four prerequisites to class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). *See also, e.g., Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). "In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). Here, Plaintiffs seek class certification under Rule 23(b)(3). The Court considers each of these requirements for class certification.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Although this is not a "strict numerical test," "substantial numbers" of affected people are sufficient to satisfy this requirement. *In re Whirlpool Corp.*, 722 F.3d at 852 (internal quotation marks omitted). Here, there are approximately 214,000 class members, which is more than sufficient to establish numerosity.

### 2. Commonality

"[T]he commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (internal quotation marks and citations omitted); *see also In re Whirlpool Corp.*, 722 F.3d at 852 ("To demonstrate

commonality, plaintiffs must show that class members have suffered the same injury.").

In this case, the Settlement Class members all suffered the same alleged injury—that, despite Defendants' formal written policy of not requiring employees to purchase or wear Abercrombie clothing, managers coerced store employees to purchase Abercrombie clothing, and this resulted in some employees not making minimum wage. Defendants largely mount a common defense that there were policies in place that explicitly refute Plaintiffs' claims. This case, therefore, presents common issues of fact sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. Typicality

A named plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

The Named Plaintiffs' claims arise from the same alleged course of conduct by Defendants. Furthermore, the Named Plaintiffs' claims are not antagonistic to the claims of the Settlement Class. Therefore, the typicality requirement has been satisfied.

### 4. Adequacy of Representation

"As to adequacy of representation, the Court looks at two factors: '(1) The representative must have common interests with the unnamed members of the

class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–0729, 2012 U.S. Dist. LEXIS 74994, at **12–13 (S.D. Ohio May 30, 2012) (quoting *Senter v. GMC,* 532 F.2d 511, 525 (6th Cir. 1976)).

As discussed *supra,* the Named Plaintiffs' claims are typical of the class, motivating them to pursue class claims. In addition, the Court has received no objections suggesting that Named Plaintiffs have not vigorously pursued the class claims. Moreover, Class Counsel has vigorously prosecuted this case over the course of many years. The Court is not left to speculate on the adequacy of their representation. Therefore, the Court finds that Named Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class.

### 5. Rule 23(b)(3)

Having determined that the four prerequisites of Rule 23(a) are satisfied, the Court now considers whether this action may properly be maintained as a class action under one of the subdivisions of Rule 23(b). Here, Named Plaintiffs seek class certification under Rule 23(b)(3), which provides that class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Factors relevant to these findings include the following:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

For the reasons previously discussed, the Settlement Class satisfies the predominance requirement. Moreover, providing an immediate and substantial benefit to the members of the Settlement Class through a class action is superior to multiple duplicative court proceedings. The legal fees associated with each separate action would likely outweigh the average award to each class member. Accordingly, the Court certifies the Settlement Class as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

### 6. Adequacy of Notice

Any class certified under Rule 23(b)(3) must satisfy the notice requirements under Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). The latter rule requires that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval" and must be preceded by notice to class members. Fed. R. Civ. P. 23(e). Under

Rule 23(c)(2), notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629–30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks omitted)).

Here, the Administrator has detailed in an affidavit the efforts taken to notify the Settlement Class of the proposed settlement. ECF No. 180-2. The Court finds that the notice was reasonably calculated under the circumstances to provide all interested parties notice of the pendency of this action and the proposed settlement. A relatively low percentage of notices were ultimately returned as undeliverable, and no objections to the settlement were received.

**B.    Class Action and Collective Action Claims Settlement**

In deciding whether to approve the settlement, the Court must consider whether the Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions

of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted).  The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

Based on the motion for final approval and the information provided at the fairness hearing, the Court finds that the seven factors support approval of the Settlement Agreement.  No party or potential class member has suggested any fraud or collusion in this case.  The parties litigated for multiple years, including engaging in significant discovery (including dozens of depositions) and motion practice, and eventually agreed upon a negotiated settlement.  If the parties had not settled, Plaintiffs would have needed to obtain Rule 23 certification of class actions in three states as well as certification of an FLSA collective action.  Class counsel and the class representatives support the settlement, and no absent class member has opposed the settlement.  Generally speaking, class action settlements in FLSA cases are in the public interest because they encourage respect for the law going forward and allow recovery for plaintiffs that would not normally pursue an individual claim due to litigation costs.

The most critical factor for the Court in approving this settlement is the likelihood of success on the merits.  There were substantial weaknesses in Plaintiffs' claims, including written policies from Defendants that employees were

not required to purchase clothing, "signed point-of-sale acknowledgments by employees representing that the purchases made were not required" by Defendants, direct testimony from employees admitting that they did not feel they were required to purchase clothing from Defendants and/or that they made clothing purchases for personal reasons, and the fact that many employees never purchased clothing from Defendants. These facts made ultimate success on the merits difficult and potentially could have resulted in decertification (or failure to certify) a Rule 23 class. The amount being distributed to the class members is relatively low as described above, but given the challenges Plaintiffs faced in proving their claims, the Court finds the settlement to be fair, reasonable, and adequate. For these reasons, and for the reasons discussed on the record at the fairness hearing, the Court **GRANTS** final approval of the settlement.

## C.    Attorney's Fees and Costs

Class Counsel seeks $7,500,000 in attorney's fees and $250,000 in costs. Mot. Attorney's Fees, ECF No. 182. As part of the settlement, Defendants agreed not to oppose the fee request. Class Counsel calculated their fees as a percentage of the common fund. Specifically, Class Counsel request 30% of the $25,000,000 common fund. *Id.* at 1.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees

and non-taxable costs that are authorized by law or by the parties' agreement."
*See* Fed. R. Civ. P. 23(h).  Class Counsel's successful pursuit of this action can
also support an award of reasonable attorney's fees.  *See Ramey v. Cincinnati
Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto–
Lite Co.*, 396 U.S. 375 (1970)).

 District courts apply a two-part analysis to assess the reasonableness of
an attorney fee petition.  *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp.
2d 752, 760 (S.D. Ohio Dec. 31, 2007).  First, the court must determine the
appropriate method to calculate the fees, using either the percentage of fund or
the lodestar approach.  *Id.*  Whichever method is utilized, the Sixth Circuit
requires "only that awards of attorney's fees by federal courts in common fund
cases be reasonable under the circumstances."  *Rawlings*, 9 F.3d. at 516.
Second, the Court must consider six factors to assess the reasonableness of the
fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

 Here, the Court is applying the percentage of the fund method.  *See, e.g.*,
*Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir.
2016) (indicating that the district court must make a "clear statement" as to which
calculation method is being applied).  Accordingly, the Court will consider the
following factors in determining whether the fee request is reasonable under the
circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value
> of the services on an hourly basis; (3) whether the services were
> undertaken on a contingent fee basis; (4) society's stake in rewarding
> attorneys who produce such benefits in order to maintain an incentive

to others; (5) the complexity of the litigation; and (6) the professional
skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Both the percentage of the common fund and the lodestar multiplier being
sought in this case are within the range of those typically awarded in FLSA cases
in this district. Also, neither Defendants nor any of the hundreds of thousands of
class members who received notice of this settlement have raised an objection to
the attorney's fees sought. Nevertheless, the Court will briefly address the six
factors, which the Court finds, on balance, support Class Counsel's attorney's fee
request.

### 1. Value of the benefit rendered to the plaintiff class

The Court's only hesitation with the attorney's fees sought in this case is
based on the value of the benefit rendered to the class. There are several
characteristics of this settlement that lead to heightened scrutiny of the benefits
being provided: 1) class counsel's receipt of a disproportionately large portion of
the settlement fund that is actually being paid; 2) Defendants' agreement to not
contest attorney's fees; and 3) a claims-made settlement in which the funds that
are not distributed revert to Defendants instead of being added to the class fund.
Other courts have noted that some of these characteristics are "subtle signs that
class counsel have allowed pursuit of their own self-interests and that of certain
class members to infect the negotiations." *Jones v. GN Netcom, Inc. (In re*

*Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)).

As discussed above, the amount actually being paid out to class members in this case is relatively small, particularly when compared to the total common fund of $25,000,000.  Both Class Counsel and Defendants would have known that the ultimate recovery by class members would be limited because of the claims-made nature of the settlement.  *See Gascho*, 822 F.3d at 298 (stating that low response rates, and, therefore, low payouts compared to the theoretical size of the common fund are "the predictable 'economic reality' of claims-made class actions") (Clay, J. dissenting).  The relatively small amounts recovered by the class members were reduced further by the size of the fee award requested by Class Counsel because it changed the CIPR calculation discussed above.

Furthermore, unlike an FLSA collective action requiring a plaintiff to affirmatively opt-in or a class action settlement that is not "claims-made," many of the employees who are not receiving any monetary benefit have compromised their rights under this settlement.  So Defendants benefit by precluding a large number of future claims, Class Counsel benefits by tying their fee request to an artificially large common fund, and many class members receive nothing.  For this reason, the Court proceeds with additional caution when evaluating this type of claims-made settlement.

It should be said, however, that there are valid reasons *in this case* for the claims-made format of the settlement.  Primarily, many employees may not have

felt coerced to purchase clothing from Defendants. Issuing a check to every former employee who purchased clothing would have unfairly rewarded some employees and also would have watered down the amount received by employees who legitimately felt aggrieved.

In any event, the Sixth Circuit and this Court have regularly approved FLSA and claims-made class action settlements like this one. Nothing specific to this case warrants a reduction in the fees sought.

## 2. Value of the services on an hourly basis

The lodestar cross-check in this case supports approval of the requested fee. Class Counsel have supported their request for fees by providing detailed billing records to the Court for *in camera* review and a lodestar cross-check. These billing records detail over 10,000 hours of legal services provided for a total lodestar of approximately $5,620,000.[3] Hallie Von Rock Aff. 13, ECF No.

---

[3] Defendants' counsel did not technically object to any of the fees proposed by Class Counsel but did point out at the fairness hearing that some of the lodestar fees may have been incurred by individuals who were not defined as "Class Counsel" under the Settlement Agreement. *See* ECF No. 168 (defining "Class Counsel" as Randall B. Aiman-Smith, Reed W. L. Marcy, Hallie Von Rock, Carey A. James, and Brent A. Robinson). Defendants' argument has some merit based on the plain language of the Settlement Agreement but does not change the Court's analysis. First, the individuals listed as "Class Counsel" were responsible for $5,214,415 out of the total billings of $5,619,746.25, so the lodestar multiplier being used does not drastically change by excluding the other attorneys who billed on this case (1.44 multiplier versus 1.33). Second, appropriately staffing large cases such as these so that attorneys with lower billing rates handle more routine matters is in the interest of more cost-effective class litigation. The Court will not discourage such practices. Finally, Defendants agreed to not object to the attorney's fees sought by Class Counsel. While the concern raised was not technically phrased as an objection, to address Defendants' specific issues with the claimed fees and reduce Class Counsel's award on that basis would be to allow Defendants to effectively object while still technically complying with the Settlement

182-2. This results in a lodestar multiplier of 1.33. This multiplier is within the range typically awarded in this district in FLSA cases.

### 3. Whether the services were provided on a contingent basis

Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *See, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

### 4. Society's stake in rewarding attorneys who produce such benefits

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior–particularly when the individual injuries are too small to justify the time and expense of litigation– and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. Without a class action, the individual plaintiffs would

---

Agreement.

Case Nos. 2:16-cv-551; 2:17-cv-1093

not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases.

### 5. The complexity of the litigation

The complexity of these cases weighs in favor of the requested attorney's fees simply because of the size of the class actions and the factual hurdles Plaintiffs faced in pursuing a class action. Wage and hour cases are becoming fairly commonplace in this Court, but this case was far more complicated than average.

### 6. The professional skill and standing of the attorneys involved

Class Counsel have extensive experience in class actions and wage and hour litigation as detailed in their affidavits. The Court has reviewed Class Counsel's credentials and is satisfied that they favor approval of the requested attorney's fees. Furthermore, Defendants were represented by excellent firms that vigorously and effectively protected their clients' rights.

For all of these reasons, the Court approves the requested attorney's fees in this case.

### D. Class Counsel's Litigation Costs

Class Counsel seeks an award of litigation costs in the amount of $250,000, slightly less than the costs they aver they incurred of $250,737. Class Counsel provided a detailed list of the costs incurred. ECF No. 182-2, Ex. F. The Court has reviewed these costs and finds them to be reasonable and necessary to these cases. The costs are approved.

### E.    Class Representative Service Award

The Settlement Agreement provides for a service award of $10,000 each to the Named Plaintiffs in the Brown Case and $5,000 each to the Named Plaintiffs in the Bojorquez Case. Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). The Named Plaintiffs were required to handle additional burdens that the class members did not face. Therefore, the Court approves the service awards as requested.

### V.

For these reasons, the Court **GRANTS** the motion for final approval of the settlement, ECF No. 180, and **GRANTS** Class Counsel's motion for attorney's fees, ECF No. 182. The Court **ORDERS** the following:

1.    The Court grants final approval of the Parties' Settlement.

2.    Pursuant to Federal Rule of Civil Procedure 23(a) and 23 (b)(3), and for settlement purposes only, the following class is certified, excluding persons who timely opted out of the Settlement per its terms:

> All persons employed by Abercrombie as non-exempt, hourly, non-management employees at an Abercrombie & Fitch, Abercrombie Kids, Hollister, and/or Gilly Hicks store in New York, Florida, Massachusetts, or California during all or part of the applicable "Class Period" for the state in which the individual was employed as set forth below:

in New York, for any time period between December 15, 2009, and February 16, 2018;

in Florida, for any time period between December 15, 2010, and February 16, 2018;

in Massachusetts, for any time period between December 15, 2012, and February 16, 2018; and

in California, between September 16, 2009, and February 16, 2018.

3.      Pursuant to 29 U.S.C. § 216(b), and for settlement purposes only, a collective action certified of persons who meet the following description and who joined this action either by submitting a joinder form or who went to the Settlement website (retailclothingsettlement.com ) and selected items and, thereby, made a claim for recovery under the Settlement:

All persons employed by Abercrombie in the United States as non-exempt, hourly, non-management employees at any Abercrombie & Fitch, Abercrombie Kids, Hollister, and/or Gilly Hicks store at any time between March 24, 2014, and February 16, 2018, excluding those individuals who worked for Abercrombie exclusively at a store within the State of California during that time period.

4.      The Notice Packet and related materials provided to the Class and Collective Members were fair, reasonable, adequate and sufficient, and provided the best practicable notice of the Settlement and its terms, and complied with the requirements of Rule 23 and 29 U.S.C. section 216(b).

5.      Service awards are approved in the amount of $10,000 each to Plaintiffs Alexander Brown and Arik Silva, and in the amount of $5,000 each to Plaintiffs Jake Vallante, Matthew Allan, and Brielle Bratton.

6.    Claims administration fees are approved in the amount of $500,000 to be paid to Dahl Administration, LLC.

7.    The sum of $37,500 is approved to be paid to the State of California for its 75% share of the $50,000 of the settlement fund allocated for settlement of the PAGA claims.

8.    Class Counsel's attorney fees are approved in the sum of $7,500,000.

9.    Class Counsel's litigation costs are approved in the amount of $250,000.

10.    The Court shall have exclusive and continuing jurisdiction over this matter for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement and this order.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT